May it please the Court. Good morning, Your Honors. This Court reviews de novo on a motion to dismiss, and here should reverse the District Court's dismissal of the Engebretson's claims for two reasons. The District Court erred as a matter of law in granting the appellees absolute immunity for executing a facially invalid order, and here the appellees failed to meet their burden of showing why they are entitled to absolute immunity pursuant to the Supreme Court's analytical framework. At the time of its decision, the District Court had not clarified, or I'm sorry, this Court had not clarified what type of immunity a correctional officer is entitled to when enforcing an invalid court order. But since then, this Court has decided three cases actually, Alston v. Reed, Stein v. Ryan, and Chappelle v. Mandeville, where this Court has applied qualified immunity to assessing the liability of correctional officers. Well, let me ask you this. It seems that in the 1983 context, every court that's considered it in other circuits, whether it's prison officials are absolutely immune for enforcing facially valid sentencing orders, they've all held that they are on the other circuits. Am I correct about that? That they are entitled to absolute immunity? Yes. There are some circuits that have not addressed the issue, but the ones that have did find absolute immunity, yes. All right. So from a policy standpoint, you know, fortunately judges are absolutely immune. There's a couple of other people, like district attorneys, for example. And what you're asking is, which concerns me, is why would we want to have prison officials interpreting our orders and deciding whether they're valid or not? Well, we're not asking that they look or interpret the orders. We're asking that they not violate the constitutional rights of prison officials. Well, but essentially that's what you're asking, because let's say that they look at it and they say, oh, this is a Judge Callahan order, and, you know, we don't think that she's really that good a judge, so we're not going to follow her order. But then they had Judge Hall and Judge DeSima, and they said, oh, they're better judges, so we're going to follow their order. I mean. No, no, absolutely not. What we're really saying is that a prison official, when at least alerted that there is a possibility that the sentence is facially invalid, that they should not prevent a prisoner from going through the habeas petition process or at least notifying someone that there may be. How would they determine, though, whether the sentence is valid or not? Hold a hearing? We're asking that at least not prevent a prisoner from contacting those that have better authority or at least better knowledge of the law to be able to challenge the validity of the sentence. See, we think we have the best knowledge. I absolutely agree. So we're not going to give them absolute immunity because they want to question what we've ordered as a judge? I mean, we went to law school. We became judges. We're either appointed or elected or any number of things, and now we're going to say, well, we think that prisoners should be able to have a hearing and decide whether we did a good job or not? Well, actually, well, prisoners should be entitled to their habeas petition, which Mr. Engelbretson was able to do here but only after he was released from prison. Five years early? Five years. Well, yes, for good time. Are you complaining that he was prevented for five years from getting his habeas, or are you suggesting that if a prisoner says that order is invalid, that there will be a duty on the part of the prison official to have a hearing or refer it to a judge or, say, file a writ right now? What are you asking? We're going to have all sorts of vexatious litigation here? No, we only ask that a prisoner be able to go through the habeas petition process to be able to challenge the validity of the sentence without having to wait until they're free from prison to be able to do that, especially if, like here, there's a valid claim that the sentence was actually invalid, like Mr. Engelbretson was able to confirm with the Montana Supreme Court. How do we know it was invalid? I mean, how is the prison official supposed to make that determination? We're not asking that the prison official be in charge of making that determination, just that a prisoner have the ability to challenge the validity of a sentence. So you're really complaining about the fact that he was prevented from bringing his writ for a number of years? That's correct. That's what you're complaining about? Yes. And that's why we feel that in that context, prison officials should not be entitled to absolute immunity because qualified immunity is sufficiently adequate to protect them in such situations and because the Supreme Court, in its consistent holdings, has held that qualified immunity is sufficient to protect prison officials. So when we apply qualified immunity, what clearly establishes a constitutional violation that your client suffered? Well, here part of it is that our client did not, well, we asked that he be afforded another opportunity to properly amend his complaint and assert the constitutional right that was violated. As a pro bono litigant, we feel that he was not able to clearly establish. You mean a pro se litigant. I'm sorry. As a pro se litigant, he was not able to clearly define what rights were violated, but he should be allowed that opportunity in the district court so that he could proceed with at least on the qualified immunity argument. I'm going to ask you a hard question here. He has to show injury, correct? Injury? Yes. Yes. And he got out five years early from prison. And I bet if I went out there and talked to everyone in their cells out there and said, if you got out five years early on your sentence by a mistake, how were you injured? You know, shouldn't you be writing someone a thank you note instead of claiming, you know, bringing a 1983 case? Well, I understand your concern, and although the facts here are not favorable, here really what this court has is. But how was he injured? He was injured in the sense that he served a probation period that he would have not served had he been able to challenge the validity of the sentence earlier. So by letting him out early when he should have been in prison, then is the next thing that when he commits a parole violation, because we let him out wrongly in the first place, so he has five years of freedom, then he commits a parole violation. Then he comes back and says, well, you can't, you know, I wouldn't have committed the parole violation if you would have kept me in prison. Well, yes. I mean, part of it is that his liberty was still restricted while he was on parole or serving probationary time. Did you want to leave her eight minutes or seven? Seven. Okay, go ahead. And secondly, although he would have been required to serve the five years had he been designated a PFO, but in its resentencing in 2007, the district court decided to dismiss his PFO designation, at which point there's at least some argument that the resentencing court was not required to make him serve the five additional years. So he may actually not have gotten out earlier and just at the appropriate time based on his good behavior for the first sentences. So I see that my time is up. All right, well, you'll reserve the balance for your colleague then. Thank you so much for your argument. May it please the Court. My name is Brenda Elias. With me at council table is Ira Aiken. We represent Warden Mahoney and Director Slaughter. Warden Mahoney was acting as an arm of the judiciary, and he is inextricably linked to the proper functioning of the criminal justice system. And for that reason, absolute immunity should apply to a corrections official who imprisons a defendant pursuant to a facially valid order. Why isn't qualified immunity sufficient? Your Honor, qualified immunity is appropriate for discretionary functions. When a warden is incarcerating an individual, if we're talking about the how, how he is incarcerating that individual, if he is, you know, committing cruel and unusual punishment, qualified immunity is the appropriate standard against which he should be considered. Here, this was not a discretionary function. Warden Mahoney had no choice but to incarcerate Mr. Engelbretson. And Mr. Engelbretson did not spend one day in prison longer than he should have. As your opponent mentioned, the Ninth Circuit cases that do address this circumstance say that prison officials are entitled to qualified immunity, right? Your Honor, no, that is with respect to discretionary functions. Oh, but is that what the case says? It only applies to discretionary functions? I don't think so. Well, Alston v. Reid and Stein v. Ryan bar a conclusion. I mean, do they bar a conclusion that absolute immunity protects prison officials who enforce facially valid court orders? I think the parties in those cases didn't actually brief that issue and we didn't address it, correct? Yes. So it doesn't bar it, but it doesn't necessarily stand for that proposition. Yes, I agree. Those cases do not stand for the proposition that qualified immunity to the exclusion of absolute immunity is the only immunity available to my clients. If you read the briefs below. But nonetheless, they apply qualified immunity. Was that a mistake to apply? Your Honor, no, it was not a mistake. The defendants in the courts below did not raise the issue of absolute immunity. And if you read the briefs in the Federal District Courts. What do you mean in these other cases? In the Alston and Stein cases, yes. The defendants in those cases did not raise the issue of absolute immunity. So those cases don't bar it, but they don't stand for the proposition that absolute immunity applies. I mean, you're asking us to step out and be the first court and to join the other circuits and say. So you don't have precedent exactly on point. You have precedent that doesn't bar it, but it decided the case on qualified immunity because the parties didn't address it. So there's a little bit of a hole there that they can argue that they can say, well, it doesn't stand for the proposition that absolute immunity applies. And you're saying, well, it doesn't say it can't apply. I agree, yes. So we have to decide that. Exactly. This is a case of first impression, and as you're aware, there's the Coverdale case that the Ninth Circuit did extend absolute immunity to a social worker for carrying out a facially valid order to remove a child from the parent's custody. Well, if we agree that absolute immunity applies here, there's also the claim of preventing a habeas petition from being filed. So would that dispose of that claim? Because we're really talking, you know, if you give them absolute immunity, the argument is based on that they have it for enforcing a validly facial court order, correct? Is your question about the allegation of being prevented from legal services? From preparing a habeas. So does that, if we find absolute immunity, does it take care of that claim? Well, first of all, do you agree there is such a claim in the complaint? No, this is not an access to courts case, and there is no constitutional right to a jailhouse lawyer. And the allegation that another inmate was transferred to another facility is not sufficient to state a claim that this individual was denied access to courts. I don't see, you know, I agree with you. I don't see a claim in the complaint of denial of access to court, and it's not argued on appeal by the appellant, right, that that's some kind of claim they're pursuing? Yes. So we're concerned really here only with this, I'll call it the wrongful sentence. Yes. Or wrongful order of incarceration. Well, yes, and that sort of turns to, we turn now to the issue of the facial validity of this judgment. Now, the Montana Supreme Court used the term facially invalid, but the Montana Supreme Court referred only to a part of the probationary sentence of Mr. Engelbretson. The Montana Supreme Court did not say that Mr. Engelbretson's judgment was facially invalid. Now, the facially, the principles are facially invalid, and we can turn to the case of Baker v. McCollum where the United States Supreme Court said, even though an arrest warrant was infirm, the erroneous arrest warrant is still nonetheless valid. Now, the Montana Supreme Court uses the term facially invalid as a term of art in the context of habeas petitions, and in that case they decided that a portion of his probationary sentence was facially invalid. Here, this Court's consideration is whether the judgment itself, within the four corners of the judgment, was it regular on its face, and was it within the jurisdiction of the court that issued it. And here the conclusion must be that, yes, Mr. Engelbretson's judgment was facially valid, and therefore, Warden Mahoney had no choice but to enforce the valid judgment of the court. Well, if we don't, all right, there's also, there's an issue about whether he can show damages at all, because he got out five years early, and most people would say, well, hey, who wouldn't want to get out, you know, mistakenly five years early on your sentence? Should we even address that from your perspective? Should we even address that issue, or should we just go to absolute immunity? The court should not address the issue of damages. This is an issue of, you know, absolute immunity. And I agree with you that Mr. Engelbretson really would not be able to show any damages that he suffered. Didn't he have to wear a bracelet, a leg bracelet? Didn't he have to report to probation officers on a regular basis? Your Honor, Mr. Engelbretson really failed to articulate the damages that he has suffered in his complaint. He did not claim that he had to wear a bracelet. He did not claim that he had to do anything that was out of the ordinary. But does all that make a difference? Because my understanding of the law is that nominal damage is sufficient to support a claim for constitutional violation, isn't it? Do you agree with that proposition? Do the cases say that? In other words, you know, we instruct jurors always, well, when we find nominal damage you can award the plaintiff $1. Isn't that sufficient to support a standing and a cause of action? I'm not sure of the answer to that question, but here Mr. Engelbretson really has not claimed any damages with respect to the time that he was on probation. And... Well, that's my point. Does he have to claim damages? Can't he be satisfied with a $1 award? The issue of damages is really not the issue before the court. Right. I agree with that. I think we're talking about in terms of has he suffered an injury sufficient to give him standing. And it seems to me because the violation of constitutional right, you know, is sufficient to give... In other words, the law thinks that's important enough that an award of $1 is enough to give that plaintiff standing. Isn't that as far as we have to go? We're not talking about how much, you know, should he prevail here? Could he get this reversed, go back to the trial court? We're not talking about how much he can recover, are we? We're not. Your Honor, if the court chooses not to recognize absolute immunity for my clients, this case would go back to the district court and it would be there where he would... Oh, you don't get the immunity unless you have a claim, do you? Correct. Don't you have to decide first whether he's got a claim, a cause of action? Well, he stated a claim and the district court determined that he was... that my clients were entitled to absolute immunity because he's... But that's what he said because first the court... First the question is whether it can be dismissed on the ground that he had not suffered any actual injury. If you affirm a dismissal on that ground, then it doesn't matter whether they're immune absolutely or qualifiably. Yes. But I think what Judge Shishim is saying is, you know, you have to give certain construction to the complaint and it's fairly liberal at that stage. So maybe he can actually state a claim and then that's when you get to the actual or the qualified immunity. I see. I understand. And, yes, I mean, he was a pro se litigant in the district court below and he was entitled to liberal construction. And that is what the district court did and gave him was, you know, liberal construction. Well, tell me the parade of horribles if the court were to, you know, from your perspective, what are the parade of horribles if we don't find actual immunity in these type of situations and require it to go to a qualified immunity analysis? Your Honor, my client, Ward Mahoney, would then be in a position of having to, you know, as this court has said, it would impose on him a judicial responsibility of reviewing the judgments that come in for the prisoners that get sent to his prison. He'd have to review the legality of the sentences to ensure that they are not unlawful. Because if we don't recognize absolute immunity for him, then he will be subject and he will be threatened with civil litigation by prisoners who claim and whose judgments might actually be unlawful as it was in this case. We want our wardens to spend their time operating prisons. Their duty is to operate safe and secure prisons, and that's what Ward Mahoney's duty is. We do not want Ward Mahoney to sit as a pseudo-appellate court and read the judgments. We do not want Ward Mahoney to interpret the law. And that is what he would have had to have done if this judgment, Mr. Engelbretson's judgment was put before him. Well, if we accept the appellant's position, are you telling me that then Warden Mahoney would essentially have more power over the judgments than I would? I mean that essentially he would be replacing what an appellate court would do? Your Honor, I think that we would sort of run into that concern. I don't think he should have, by any means, any authority that a court has. But they seem to be arguing for something narrower, and, you know, obviously courts concern themselves with. We don't, you know, we don't want prisoners to have no remedy of certain things. So what would a prisoner's, you know, they're asking that Warden Mahoney essentially sit in as appellate review. But what if ultimately what in the system would allow an inmate, I mean, to have review of court orders that wouldn't involve Warden Mahoney? Your Honor, there are procedural safeguards, and there were procedural safeguards available to Mr. Engelbretson. He had the opportunity to appeal his sentence. He had the opportunity while he was in prison to file a habeas petition. He had the opportunity to file a post-conviction relief petition, and he did not do any of those things, and he waited until he was out of prison for him to challenge his sentence. And so those are the ways that he has to challenge the validity of his sentence. And, you know, I feel like I want to just point out that, you know, this was a mistake of the judgment, that the judge missed, the prosecutor missed, and the defense attorney missed. And I think we're asking Warden Mahoney for that's a tall order for a non-attorney to testify. That's the problem. You see, I agree with you. That's the problem. I mean, this jury, you know, trying to hold the warden responsible for a mistake the judge made, maybe it's better to, you know, put a little chink in the armor of judicial immunity, right, and let him sue the judge. I do not believe that judge – no, judges – Well, I should be able to sue the warden. I mean, the warden, you know, is, as you say, he's looking at a piece of paper, and it says, you know, 10 years imprisonment, and that's what he does. And the warden is acting as an extension, as an arm of the judiciary, when he enforces and carries out the court orders. The judge has immunity, and for very good reasons. We want our judges to act independently, and we want them to act without the fear of what the consequences might be if they make a mistake. Now, Warden Mahoney was not responsible in any way for the judgment that was issued here, and he should not be – he should get immunity, the same immunity or immunity that's covered by the judge in this circumstance. He had an absolute duty to carry out the judgment of the district court. He should be entitled to absolute immunity, and this court should affirm the district court. Thank you. All right, thank you. Good morning. Good morning, Your Honors. Kayla Liotti, also on behalf of the appellant, Mr. Ingebrigtsen. May I proceed? Yes. Your Honor, in rebuttal, I'd like to address three specific points that were raised. First, I would like to address this court's concern as to whether or not Mr. Ingebrigtsen actually suffered and can prove damages. Second, I would like to address the concerns with the facial validity or invalidity of the sentence that he was sentenced under. And third, I would like to address the appellee's point that somehow the fact that this is a discretionary function removes it from the purview of qualified immunity. First, Mr. Ingebrigtsen, if you – I'm sorry, Your Honor. If I could direct you to the Montana Code that he was sentenced under. I know you pointed out, Judge Callahan, that you were concerned that he was actually released five years early and that somehow he is getting a windfall. But if you look at Montana Code, annotated 4618.502, now that provides for imprisonment for someone designated as a PFO. And the contention here is that the sentence was invalid because five years of it were suspended when they should not have been. But if you note, that five years could have been served concurrently. With his 10 years, he was already serving in prison. But I guess that the whole thing is, when you look at this procedurally, you know, he has a sentence. He could have appealed his sentence. When he's serving the sentence, he could have, you know – and he did. And they somehow straightened things. And he could file a habeas and he could do all of these. What he's asking is he wants to bring a civil rights – he wants to bring a 1983 case against a warden saying, you should have second-guessed what the judges said and not gone through the regular process. And it's not something that we're missing, that he waits until he sort of gets olly-olly oxen free, and then he brings a civil rights suit. I absolutely understand your concern, Your Honor. However, if he had been able to challenge – if the contention is that the defendants were interfering with his ability to pursue his habeas writ, if he had been able to bring the challenge while he was still in prison and the sentencing court did what it did, and it said, we're exercising our discretion, we're not going to designate you as a PFO anymore, so you're not going to be sentenced under that statute, then if it had occurred just as it did, he would have been released, he would not have served probation, and he would have had no damages. He would have had no probation or the damages that he incurred going to therapy, having to comply with all of the court orders for his probation. Additionally, Your Honor, while the facial validity is contested here, if we go back to the – as a part of a sentence, you can challenge what you think is – we get those all the time, what people think are unlawful conditions of probation or unlawful conditions of supervised release, and judges are reviewing what judges have said. You're trying to create something extra once someone gets out that then they can go back and say, well, the warden should be a super appellate body, better than the trial judge, better than the appellate judges, and tag, you're it, and we can sue you for damages now. Not at all, Your Honor. And we are not – please understand, we are not asking at all that a warden or any GOC official should sit in a position of having to review a sentence. In fact, that's already foreclosed by a holding of this court in Stein. Specifically in Stein, this court said there is no duty for prison officials to sua sponte, review orders, and come to judgments. The singular thing that we are asking is that once they have received notice of the invalidity of a sentence or the contention of invalidity of the sentence, that they take steps from that point of receiving notice to at least not interfere with him being able to seek relief. And, Your Honor, I understand the myriad public policy concerns that you've raised here, and I would like to direct the court to Clinger v. Saxner. Now, that's a United States Supreme Court, and there the court held that prison officials who were sitting in an even more adjudicatory position than the prison officials here were not entitled to absolute immunity. There the prison officials sat on a discipline committee, and they actually had an adjudicatory role within the prison. They heard evidence, they reviewed prisoner statements, and they were responsible for rendering discipline. Okay. If we don't find absolute immunity and we go to constitutional immunity, what's the constitutional violation here? The constitutional violation, unfortunately, Your Honor, the facts are rather indistinct here, and I think that that is by virtue of him being a pro se litigant. The constitutional violations that he alleges are that the prison officials interfered with his seeking relief through his habeas petition. So, but really, what are you arguing the constitutional violation is? I think that at the heart of that interference becomes a due process wrongful restraint of liberty contention. Do you have a case to cite for that? What case are you citing? Is there any case that says that? Not that I'm aware of, Your Honor, and I would ask this Court permit Mr. Ingebrigtsen the ability to amend his complaint to really concisely indicate. But how do you unwind that from the fact that to get to a due process violation, the warden would have to find that the warden had a duty not to enforce a valid court order? Not at all, Your Honor. And he had no duty to not enforce the order. As we said, while it was certainly regular on its face, however, the court didn't have jurisdiction to give that order. That order was facially invalid insofar as it... So it's up to the ward to question the jurisdiction of the court? Never, Your Honor. You just said the court didn't have jurisdiction, so... I'm sorry. The warden off the hook. No. Let me clarify. I'm sorry. The warden is never in a position to review and make legal determinations. The warden is certainly in a position to not interfere with someone who is contesting their sentence as invalid and seek relief. All right. But that's very broad. And that's so, and this specifically, his due process violation is he still has to look at that order and say that you have a right to challenge that. And I think Judge Nelson said, to be clearly established, it's not absolutely required, but it really helps you if you have a case. And there's no case on that. So then what happens then, even under the qualified immunity, under the second prong, if it's not clearly established, he wins there. I understand your concern, and I understand that it could appear to be harmless in that way. But we ask this court to really confine its examination of it to whether or not absolute or qualified immunity is appropriate and allow the district court to kind of permit Mr. Ingebretson, as a pro se litigant, to amend his complaint to fully capture the heart of his claim and then decide it on the merits. Just a minute. You just said you want the court to determine whether absolute or qualified immunity is appropriate. Yes, Your Honor. In other words, did somebody here raise qualified immunity defense? No, Your Honor. I don't think that's an issue that's before us, is it? No, Your Honor. It's just simply that the Supreme Court recognizes that under 19… How can we decide something that's not before us? You don't need… Isn't it our issue to decide, one, whether or not absolute immunity applies? Your Honor, I seem out of time. May I address your question? You don't need to decide whether or not qualified immunity applies. You simply need to decide whether or not absolute immunity applies to correctional officers who are enforcing an invalid court order. So if we say no, it doesn't apply, then we just send it back to the district court, right? Yes, Your Honor. To do whatever it thinks is right, and maybe at that point someone can raise qualified immunity. If we say it does apply, it's the end of the case. Yes, Your Honor. All right. Let me just clarify what you're saying. Although it was not raised on appeal, since your litigant is pro se, we ought to remand and allow the litigant to amend the complaint to claim qualified immunity? Is that what you're saying? I'm sorry, Your Honor. Could you clarify your question? You indicated that on appeal the issue of qualified immunity was not raised. You were suggesting that we ought to remand to the district court, allow the pro se plaintiff to amend the complaint to claim qualified immunity? Is that what you're saying? I'm sorry, Your Honor. No. I would ask this Court permit him to remand his ‑‑ to remand and allow him to ‑‑ He wants to amend his complaint and then the appellees, their appellees now are the defendants down there, would then be prevented from claiming absolute immunity and then they would claim qualified immunity. That would be the posture that you're ‑‑ Correct, Your Honor. All right. So your wish list is say that the district court was wrong in deciding this case based on absolute immunity because absolute immunity is not available. Yes, Your Honor. Okay. Got it. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Nelson, Tashima, Callahan